DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Willard McCarley has appealed from the judgment of the Summit County Court of Common Pleas that found him guilty of aggravated murder. This Court reverses.
 I {¶ 2} On May 21, 2004, a secret indictment was filed against DefendantA-ppellant Willard McCarley for one count of aggravated murder, in violation of R.C. 2903.01(A), a special felony. The charges stem from the 1992 homicide of Charlene Puffenbarger. On June 10, 2004, Appellant entered a "not guilty" plea to the indictment.
 {¶ 3} On December 9, 2004, Appellant filed a motion in limine to exclude the introduction of evidence and testimony by prosecution witnesses proffered as experts in the area of DNA analysis. Appellant's motion stated that the State's "proposed DNA evidence and expert testimony in this matter does not meet the necessary standards to cause it to be relevant and reliable evidence[.]" Appellant moved for an Evidence Rule 104(A) hearing prior to trial to determine if the evidence met the proper standards under Evidence Rule 702. Appellant also filed a motion to suppress the DNA evidence. Appellant argued that said evidence was "taken in violation of the Fourth Amendment to the United States Constitution and Article I, § 14 of the Ohio Constitution[.]"
 {¶ 4} On December 20, 2004, the trial court denied Appellant's motion to exclude the DNA evidence. On January 12, 2005, Appellant filed a motion to suppress the following evidence: 1) any identifications of the offender by the victim's minor son; 2) testimony by Dr. Lord concerning statements made to her by said minor son; 3) any expert opinion by Dr. Lord, such as a clinical evaluation, of said minor son; and 4) any statements by the victim regarding her fear of Appellant. Appellant filed a supplemental motion in support of this motion on January 19, 2005.
 {¶ 5} On January 14, 2005, Appellant's motion to suppress the DNA evidence came before the trial court. The trial court found that under the totality of the circumstances there was probable cause for the search warrant and overruled Appellant's motion.
 {¶ 6} A jury trial commenced on January 24, 2005 and continued until February 2, 2005 at which time the jury retired for deliberation. On February 4, 2005, Appellant was found guilty of aggravated murder. On February 9, 2005, Appellant was sentenced to life imprisonment with parole eligibility after serving 20 full years of incarceration.
 {¶ 7} Asserting seven assignments of error, Appellant has appealed several of the trial court's procedural and evidentiary rulings. For ease of analysis, we first address Appellant's third assignment of error.
 II Assignment of Error Number Three
"THE COURT COMMITTED REVERSIBLE ERROR BY VOUCHING FOR THE CREDIBILITY OF DR. DAWN LORD."
 {¶ 8} In his third assignment of error, Appellant has argued that the trial court erred when it commented on Dr. Lord's reputation in the presence of the jury. Specifically, Appellant has asserted that the trial court's comments bolstered Dr. Lord's credibility and prejudiced the defense. We agree.
 {¶ 9} In exercising his duty to control a criminal trial pursuant to R.C. 2945.03, the trial judge is to remain impartial and refrain from making comments which may influence a jury.State v. Boyd (1989), 63 Ohio App.3d 790, 794. "[T]he judge must be cognizant of the effect of his comments upon the jury[.]"State v. Wade (1978), 53 Ohio St.2d 182, 187, vacated and remanded on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3138,57 L.Ed.2d 1157. A judge's "participation by * * * comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on * * * the credibility of a witness." State ex rel. Wise v. Chand (1970),21 Ohio St.2d 113, at paragraph three of the syllabus. Furthermore, "juries are highly sensitive to every utterance by the trial judge" and any comments by the trial judge must be appropriate under the circumstances. (Quotation omitted.) Wade,53 Ohio St.2d at 188.
 {¶ 10} In deciding whether a trial judge's comments were appropriate, we must determine whether the comments were prejudicial to the defendant's right to a fair trial. Id. InWade, the Ohio Supreme Court established that the following factors must be considered when determining whether a trial judge's remarks were prejudicial:
"(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel" Id; See, also, State v. Lute (Nov. 22, 2000), 9th Dist. No. 99CA007431, at 10.
 {¶ 11} The instant assignment of error stems from the actions of the trial judge during Dr. Lord's testimony. A review of the transcript reveals that throughout her testimony Dr. Lord voiced her concerns over testifying in the instant matter because her psychology license was under suspension. After a brief side-bar concerning whether letters/reports Dr. Lord sent to Detective Karabatsos could be read to the jury, the trial court made the following statement:
"Dr. Lord has in front of her Exhibits 6, 7, and 8, letters purported to have been written by her back in 1992. She is going to be asked to read the contents of those letters to you, understanding she has no independent recollection of the treatment or what went into those particular letters. The purpose of sharing this with you is not to prove the truth of any matter contained therein, but only to the fact that Dr. Lord back in 1992 purported to do what is set forth in the letter."
 {¶ 12} The trial court then instructed Dr. Lord to read the letters and Dr. Lord asked that she be ordered to read them so that it would be clear for the record that she was not breaching the terms of her suspension from the practice of psychology. With some interruption by Dr. Lord, the trial judge responded: "Yes. Clearly the Court does not — the Court is well aware, Dr. Lord * * * of your long-standing reputation in the community. And we certainly hope you get reinstated one of these days." Dr. Lord then proceeded to read the letters to the jury. After Dr. Lord finished reading the letters, Appellant conducted a brief cross-examination.
 {¶ 13} Appellant has claimed the trial judge committed prejudicial error in its comments to Dr. Lord regarding her reputation and in his well wishes regarding a possible reinstatement. We must initially note that from our review of the entire transcript it is clear that the trial judge's comments to Dr. Lord were not made to persuade the jury or as a result of bias, rather they were made out of empathy for Dr. Lord's situation and to calm her fears of reprimand from the psychology board for testifying in this matter. Nonetheless, the issue before this Court is whether the comments were prejudicial, not the trial judge's intent.
 {¶ 14} To determine if the judge's comments were prejudicial we reviewed the record under the Wade standard, with the burden on Appellant to demonstrate prejudice. We initially note that this Court recognizes under Wade that the trial judge is in the best position to decide if a comment is prejudicial and when necessary he can make the appropriate corrective measures. However, we find that in the instant matter the effect of the judge's comments could only be seen upon review of the entire record, which was not possible when the judge reviewed his comments after Appellant's motion for a mistrial.
 {¶ 15} After considering the comments in light of the circumstances under which they were made, the possible effect of the comments on the jury, and their effect on Appellant's defense, we find that the trial judge's comments were prejudicial. It is clear from the record that Dr. Lord was not a strong witness for the State; she could not recall interviewing the minor child involved and she could not recall the minor child making the statements that were in the letters at issue. Moreover, from the beginning of her testimony it was obvious she was concerned about testifying; she openly voiced her concerns and even objected to some questions. Before hearing from Dr. Lord regarding the letters, the trial judge informed the jury that Dr. Lord would be reading the letters that were "purported to have been written by her back in 1992." Immediately before she read the letters, the trial judge commented that Dr. Lord had a "long-standing reputation in the community" and that the community in general hoped Dr. Lord would soon be reinstated to the practice of psychology. In light of the circumstances of this case, including subsequent events during the trial, such an endorsement went beyond polite banter and into the realm of prejudicial comments.
 {¶ 16} We find that the trial judge's statements made during the direct examination of this witness bolstered the credibility of the witness, especially since the witness could not remember the events to which she was testifying. The jury was presented with a witness that could not remember writing letters concerning eye-witness accounts of the murder and the judge commented that the witness had a long-standing reputation in the community. We find the judge's comments were likely interpreted by the jury as the judge finding Dr. Lord to be an honest, trustworthy, and competent witness; such a determination is for the jury to make without input from the judge. With the judge's comments in mind, it is not unreasonable to determine that the jury applied the comments regarding Dr. Lord to her overall testimony and the content of the letters.[1] Our determination is evident from the fact that the jury requested Dr. Lord's letters during deliberations.
 {¶ 17} We are not persuaded by the State's arguments that Dr. Lord's credibility is not an issue because the letters were not treated as substantive evidence; the State relied on the contents of the letters throughout its case and Dr. Lord's testimony was a major portion of the State's evidence against Appellant. Moreover, the State specifically relied on the letters in its closing argument when it described the child's comments to Dr. Lord and reiterated that the letters showed the child had twice identified Appellant as the killer. We find it clear that the jury found Dr. Lord's presence and testimony significant. In essence, we find that the trial judge's comments regarding Dr. Lord resulted in the jury interpreting the judge's comments as "believe this witness and anything she has said before, including the content of the letters."
 {¶ 18} Another important factor under Wade is the impact of the comments on Appellant's cross-examination of Dr. Lord. We find that Appellant's counsel was impaired by the trial judge's comments because counsel had the daunting task of cross-examining a witness that the judge had essentially endorsed as being a credible witness and well regarded in the community. With the judge's comments fresh in the jury's mind, Appellant's counsel ran the risk of antagonizing the jury by vigorously questioning the already vouched for credibility of Dr. Lord. We recognize the State's argument that Dr. Lord testified on cross-examination that she did not recall writing the letters at issue, but we cannot find that her lack of memory reduced the influence of the trial judge's comments. The jury was presented with a witness that could not recall her past actions, letters that were purportedly written by the witness in 1992 that pointed to Appellant as the killer, and a trial judge's endorsement of said witness as a doctor with a long-standing reputation in the community. We find that the circumstances of this case demonstrate a great impairment to the defense.
 {¶ 19} Based on the foregoing, we find that Appellant has met his burden under the Wade standard and that the trial judge's comments were prejudicial to his right to a fair trial. Accordingly, Appellant's third assignment of error has merit.
 Assignment of Error Number One
"THE COURT ERRED IN PERMITTING DR. DAWN LORD TO TESTIFY IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND IN VIOLATION OF THE SUPREME COURT DECISION CRAWFORD V. WASHINGTON."
 Assignment of Error Number Two
"THE COURT ERRED IN PERMITTING DR. DAWN LORD TO READ HER REPORTS INTO EVIDENCE BECAUSE SHE WAS NOT A COMPETENT WITNESS OR A QUALIFIED EXPERT WITNESS AND BECAUSE HER REPORTS WERE INADMISSIBLE HEARSAY AND BECAUSE HER REPORTS CONTAINED INADMISSIBLE HEARSAY WITHIN HEARSAY FROM AN INCOMPETENT THREE YEAR OLD CHILD WITNESS."
 Assignment of Error Number Four
"THE COURT ERRED IN PERMITTING HEARSAY EVIDENCE FROM FIVE DIFFERENT WITNESSES, PHYLLIS PUFFENBARGER, CHERYL SCHWEICKART, ROGER HERRINGTON, FRANCINE ANN CLARK, AND MICHELLE GREEN IN DIRECT VIOLATION OF THE DEFENDANT'S RIGHT TO CONFRONT HIS ACCUSERS AND IN VIOLATION OF OHIO RULES OF EVIDENCE INVOLVING HEARSAY."
 Assignment of Error Number Five
"THE COURT ERRED IN ALLOWING PHYLLIS PUFFENBARGER TO TESTIFY AND IN ALLOWING THE PROSECUTION TO INTRODUCE INTO EVIDENCE A PHOTOGRAPH OF HER COAT IN VIOLATION OF THE SEPARATION OF WITNESSES ORDER AND IN VIOLATION OF THE DISCOVERY RULES."
 Assignment of Error Number Six
"THE COURT ERRED IN FAILING TO CONDUCT A DAUBERT HEARING IN ORDER TO DETERMINE IF THE STATE'S D.N.A. EXPERT SHOULD HAVE BEEN ALLOWED TO TESTIFY AS SAID D.N.A. RESULTS WERE NOT RELIABLE IN IDENTIFYING WILLARD S. McCARLEY AS THE PERSON WHO MURDERED CHARLENE PUFFENBARGER."
 Assignment of Error Number Seven
"THE COURT ERRED IN PERMITTING EVIDENCE OF `OTHER ACTS' VIA THE TESTIMONY OF KIMBERLY PENNINGTON IN VIOLATION OF THE OHIO RULES OF EVIDENCE."
 {¶ 20} In his remaining assignments of error, Appellant has alleged various procedural and evidentiary errors. Given this Court's resolution of Appellant's third assignment of error, Appellant's remaining assignments of error are moot and we decline to address them. See App.R. 12(A)(1)(c).
 III {¶ 21} Appellant's third assignment of error is sustained. This Court declines to review Appellant's remaining assignments of error. See App.R. 12(A)(1)(c). The judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Carr, J. concurs.
Slaby, P.J. concurs in judgment only.
[1] We reach this conclusion notwithstanding the trial judge's instruction to the jury prior to deliberation that if he said or did anything that the jury considered an indication of his or the Court's view they were instructed to disregard it. We do not find that under the facts and circumstances of this case the court's general, boiler-plate instruction cured the prejudice.